IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 21- |
| v. | : | DATE FILED: APRIL 15, 2021 |
| CHERYL LUTTS | : | VIOLATIONS:<br>18 U.S.C. § 1343 (wire fraud – 22 counts) |
| | : | 18 U.S.C. § 1341 (mail fraud – 2 counts)<br>Notice of forfeiture |

## INDICTMENT

### COUNTS ONE THROUGH TWELVE

**THE GRAND JURY CHARGES THAT:**

At all times material to this Indictment:

1. Defendant CHERYL LUTTS was a resident of Philadelphia, Pennsylvania.

2. FirsTrust Savings Bank was a financial services corporation, headquartered in Conshohocken, Pennsylvania with offices in, among other places, Horsham, Pennsylvania.

3. The American Express Company ("Amex") was a multinational financial services corporation headquartered in New York, New York.

4. From in or around June 2016 through on or about August 13, 2019, defendant CHERYL LUTTS worked as Director of Business Operations for the Jewish Exponent, a subsidiary of the Jewish Federation of Greater Philadelphia, a nonprofit corporation located in Philadelphia, Pennsylvania.

5. Defendant CHERYL LUTTS' duties as Director of Business Operations for the Jewish Exponent included administering the company budget, keeping accounting journals and

1

the General Ledger, supervising and managing accounts payable and receivable, expense reporting, processing and reviewing monthly account statements and managing financial statements.

6. The Jewish Exponent had Amex corporate credit cards issued in the name of defendant CHERYL LUTTS for defendant LUTTS to use for business expenses.

7. Amex issued monthly statements to the Jewish Exponent for the corporate credit cards on its account and those statements were sent to defendant CHERYL LUTTS for processing and payment.

8. Defendant CHERYL LUTTS also had personal Amex credit cards issued in her name and for which monthly account statements were issued.

9. As the Director of Business Operations of the Jewish Exponent, defendant CHERYL LUTTS had access to, and was an authorized signor on, the Jewish Exponent's FirsTrust business checking account ending in 4819.

10. From at least in or about November 2016 through in or about August 2019, in the Eastern District of Pennsylvania, and elsewhere, defendant

**CHERYL LUTTS**

devised and intended to devise a scheme to defraud her employer, the Jewish Exponent, and to obtain money and property by means of false and fraudulent pretenses, representations and promises.

**MANNER AND MEANS**

It was part of the scheme that:

11. Defendant CHERYL LUTTS used her personal Amex credit cards and her

2

corporate Amex credit cards to purchase and pay for personal expenses, including, among other things, rideshare and other transportation services, automotive services or supplies, insurance, entertainment, parking, travel and lodging, healthcare and exercise services, utility services, education and career services, legal services, funeral and burial services, merchandise, food, alcohol, and other items from retail stores, grocery stores, convenience stores, websites, restaurants, and delivery services. Defendant LUTTS also routinely used her personal Amex credit cards and her corporate Amex credit cards to transfer money to various individuals using, among other things, PayPal or CashApp. None of these were legitimate business expenses of the Jewish Exponent.

12. Defendant CHERYL LUTTS accessed Amex's payment system and fraudulently used the Jewish Exponent's FirsTrust checking account to make Automatic Clearing House ("ACH") payments totaling approximately $982,781.64 to her personal Amex credit cards for the personal expenses described above that were not legitimate business expenses of the Jewish Exponent.

13. Defendant CHERYL LUTTS signed checks to Amex drawn on the Jewish Exponent's FirsTrust checking account and used them to pay expenses charged to the Jewish Exponent's corporate credit cards. These checks included payments of a total of approximately $205,976.95 for charges to defendant LUTTS' corporate Amex credit cards for the personal expenses described above that were not legitimate business expenses of the Jewish Exponent.

14. Defendant CHERYL LUTTS took several actions to disguise her fraudulent activities from her employer. For example, she provided the Jewish Exponent's management with financial statements that did not include a balance sheet or included a balance sheet that was

later determined not to match the account balances and/or the transactions reflected on the FirsTrust bank statement for the Jewish Exponent's business checking account. She also provided the Jewish Exponent's management with bank reconciliation statements that did not reflect the true balances in the Jewish Exponent's FirsTrust checking account and did not reflect all of the ACH payments to Amex discussed above.

15. On or about the dates set forth below, in the Eastern District of Pennsylvania, and elsewhere, defendant

CHERYL LUTTS,

for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below, each constituting a separate count:

| Count | Date | Description |
| --- | --- | --- |
| 1 | 03/01/2017 | An unauthorized ACH payment of $6,250.00 transmitted via interstate wire from Horsham, PA to Greensboro, NC and Phoenix, AZ. |
| 2 | 06/01/2017 | An unauthorized ACH payment of $6,850.00 transmitted via interstate wire from Horsham, PA to Greensboro, NC and Phoenix, AZ. |
| 3 | 10/30/2017 | An unauthorized ACH payment of $8,650.00 transmitted via interstate wire from Horsham, PA to Greensboro, NC and Phoenix, AZ. |
| 4 | 11/29/2017 | An unauthorized ACH payment of $9,650.00 transmitted via interstate wire from Horsham, PA to Greensboro, NC and Phoenix, AZ. |
| 5 | 01/02/2018 | An unauthorized ACH payment of $9,650.00 transmitted via interstate wire from Horsham, PA to Greensboro, NC and Phoenix, AZ. |
| 6 | 03/29/2018 | An unauthorized ACH payment of $7,800.00 transmitted via interstate wire from Horsham, PA to Greensboro, NC and Phoenix, AZ. |

| Count | Date | Description |
|---|---|---|
| 7 | 04/30/2018 | An unauthorized ACH payment of $8,300.00 transmitted via interstate wire from Horsham, PA to Greensboro, NC and Phoenix, AZ. |
| 8 | 07/30/2018 | An unauthorized ACH payment of $6,250.00 transmitted via interstate wire from Horsham, PA to Greensboro, NC and Phoenix, AZ. |
| 9 | 11/29/2018 | An unauthorized ACH payment of $9,650.00 transmitted via interstate wire from Horsham, PA to Greensboro, NC and Phoenix, AZ. |
| 10 | 02/04/2019 | An unauthorized ACH payment of $16,500.00 transmitted via interstate wire from Horsham, PA to Greensboro, NC and Phoenix, AZ. |
| 11 | 07/01/2019 | An unauthorized ACH payment of $9,500.00 transmitted via interstate wire from Horsham, PA to Greensboro, NC and Phoenix, AZ. |
| 12 | 08/05/2019 | An unauthorized ACH payment of $9,750.00 transmitted via interstate wire from Horsham, PA to Greensboro, NC and Phoenix, AZ. |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS THIRTEEN AND FOURTEEN

THE GRAND JURY FURTHER CHARGES THAT:

1. Paragraphs 1 through 9 and 11 through 14 of Counts One through Twelve of this Indictment are realleged here.

2. From on or about February 25, 2017 through on or about July 31, 2019, in the Eastern District of Pennsylvania, defendant

### CHERYL LUTTS,

having devised and intending to devise and for the purpose of executing the scheme to defraud her employer, the Jewish Exponent, and to obtain money and property by means of false and fraudulent pretenses, representations and promises, knowingly caused to be placed in an authorized depository for mail, matter to be sent by the United States Postal Service and by private and commercial interstate carrier, according to the directions thereon, the items described below, each mailing constituting a separate count:

| Count | Date of Check | Description of Mailing |
|---|---|---|
| 13 | 04/30/2018 | Check payable to American Express in the amount of $22,771.21 from the Jewish Exponent in Philadelphia, PA to American Express in Carson, CA. |
| 14 | 07/30/2019 | Check payable to American Express in the amount of $21,277.62 from the Jewish Exponent in Philadelphia, PA to American Express in Carson, CA. |

All in violation of Title 18, United States Code, Section 1341.

6

## COUNTS FIFTEEN THROUGH TWENTY-FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1 and 3 of Counts One through Twelve of this Indictment are realleged here.

2. The Encore Series, d/b/a The Philly POPS ("The Philly POPS"), is a non-profit organization based in Philadelphia, Pennsylvania.

3. After the employment with her prior employer ended and, from on or about September 26, 2019 through on or about October 23, 2020, defendant CHERYL LUTTS worked as Controller for The Philly POPS.

4. As Controller for The Philly POPS, defendant LUTTS oversaw the accounting operations of The Philly POPS and was responsible for ensuring ongoing justification of expenses, accounts payable, and payroll, completing periodic bank reconciliations, making timely debt payments and issuing timely and complete financial statements.

5. Republic Bank was a financial services corporation, with a head office branch in Philadelphia, Pennsylvania.

6. From on or about October 22, 2019 through on or about December 29, 2020, in the Eastern District of Pennsylvania, and elsewhere, defendant

**CHERYL LUTTS**

devised and intended to devise a scheme to defraud her employer, The Philly POPS, and to obtain money and property by means of false and fraudulent pretenses, representations and promises.

**MANNER AND MEANS**

It was part of the scheme that:

7. As the Controller of The Philly POPS, defendant CHERYL LUTTS had access to, and was an authorized signor on, The Philly POPS' Republic Bank accounts, including the business checking accounts ending in 2062, 0191 and 1651.

8. The Philly POPS issued Republic Bank debit cards to certain employees, including defendant CHERYL LUTTS to use for business expenses, including those related to operations, ticket sales, and fundraising. These debit cards were associated with The Philly POPS' Republic Bank accounts including those ending in 2062 and 1651.

9. The Philly POPS required employees using the company debit cards to submit receipts for all expenses charged to those cards and did not allow the cards to be used for cash withdrawals.

10. Defendant CHERYL LUTTS used The Philly POPS' company debit cards issued in her name and in the names of former employees of The Philly POPS to purchase and/or pay for personal expenses totaling approximately $133,492.29. These personal expenses included, among other things, education and career services, cellular telephone services, rental vehicles, transportation and lodging, food and delivery services, legal services, utility services, merchandise, food, and other items from retail stores, grocery stores, convenience stores, websites, restaurants, and delivery services. Defendant LUTTS did not supply receipts for these personal expenses.

11. Defendant CHERYL LUTTS also used The Philly POPS' company debit cards to withdraw cash and transfer money to various individuals using, among other things, PayPal and

CashApp. Defendant LUTTS did not supply receipts for these transactions, which were to individuals who were not employees or approved vendors of The Philly POPS.

12. The Philly POPS did not have any accounts with, or utilize the services of, Amex.

13. Nevertheless, from on or about October 22, 2019 through on or about October 21, 2020, defendant CHERYL LUTTS routinely accessed Amex's payment system and fraudulently used the Republic Bank checking account numbers of her employer, The Philly POPS, to make a total of at least approximately $121,124.69 in ACH payments to her and others' personal Amex credit cards.

14. None of the above-mentioned expenditures were related to, or legitimate business expenses of, The Philly POPS.

15. On or about the dates set forth below, in the Eastern District of Pennsylvania, and elsewhere, defendant

**CHERYL LUTTS,**

for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below, each constituting a separate count:

| Count | Date | Description |
|---|---|---|
| 15 | 10/22/2019 | An unauthorized ACH payment of $2,200.00 transmitted via interstate wire from Bethlehem, PA to Greensboro, NC and Phoenix, AZ. |
| 16 | 11/18/2019 | An unauthorized ACH payment of $4,000.00 transmitted via interstate wire from Bethlehem, PA to Greensboro, NC and Phoenix, AZ. |
| 17 | 03/05/2020 | An unauthorized ACH payment of $8,111.27 transmitted via interstate wire from Bethlehem, PA to Greensboro, NC and Phoenix, AZ. |

| Count | Date | Description |
|---|---|---|
| 18 | 06/29/2020 | An unauthorized ACH payment of $4,400.00 transmitted via interstate wire from Bethlehem, PA to Greensboro, NC and Phoenix, AZ. |
| 19 | 07/07/2020 | An unauthorized ACH payment of $4,200.00 transmitted via interstate wire from Bethlehem, PA to Greensboro, NC and Phoenix, AZ. |
| 20 | 07/29/2020 | An unauthorized ACH payment of $4,000.00 transmitted via interstate wire from Bethlehem, PA to Greensboro, NC and Phoenix, AZ. |
| 21 | 09/02/2020 | An unauthorized debit payment of $1,226.38 transmitted via interstate wire from Philadelphia, PA to Omaha, NE. |
| 22 | 09/28/2020 | An unauthorized debit payment of $859.14 transmitted via interstate wire from Philadelphia, PA to Omaha, NE. |
| 23 | 10/09/2020 | An unauthorized ACH payment of $4,000.00 transmitted via interstate wire from Bethlehem, PA to Greensboro, NC and Phoenix, AZ. |
| 24 | 10/21/2020 | An unauthorized ACH payment of $1,575.00 transmitted via interstate wire from Bethlehem, PA to Greensboro, NC and Phoenix, AZ. |

All in violation of Title 18, United States Code, Section 1343.

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

1. As a result of the violations of Title 18, United States Code, Sections 1341 and 1343, set forth in this indictment, defendant

## CHERYL LUTTS

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such violations, including but not limited to the sum of $1,443,375.57; and

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

A TRUE BILL:

_____
GRAND JURY FOREPERSON

_____
JENNIFER ARBITTIER WILLIAMS
ACTING UNITED STATES ATTORNEY

No. _ _ _ _ _ _ _ _

# UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

CHERYL LUTTS

## INDICTMENT

18 U.S.C. § 1343 (wire fraud – 22 counts)
18 U.S.C. § 1341 (mail fraud – 2 counts)
Notice of Forfeiture

A true bill.

_____

Filed in open court this _____ day,
of _____ A.D. 20 _____

_____
Clerk

Bail, $ _____